UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORP., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JAMES MICHAEL JACOBS et al., )<br>)<br>Defendants. )<br>_____ ) | 3:13-cv-00084-RCJ-VPC<br><br>**ORDER** |

This case arises out of the failure of a bank due to alleged malfeasance by its directors and officers in approving bad loans. Pending before the Court are a Motion for Good Faith Determination (ECF No. 39), a Motion to Strike Affirmative Defenses (ECF No. 47), a Motion to Dismiss Counterclaims (ECF No. 59), a Motion to For Leave to File Amended Answer (ECF No. 61), and two Motions to Strike (ECF Nos. 72, 74).

**I.     FACTS AND PROCEDURAL HISTORY**

On February 26, 2010, the Financial Institutions Division of the Nevada Department of Business and Industry revoked the charter of non-party Carson River Community Bank (the "Bank") and appointed Plaintiff Federal Deposit Insurance Corp. ("FDIC") as receiver pursuant to 12 U.S.C. § 1821(c). (*See* Compl. ¶¶ 4–5, Feb. 22, 2013, ECF No. 1). FDIC sued Defendant James M. Jacobs in this Court for gross negligence and breach of fiduciary duties, alleging that approximately $3.6 million of the Bank's losses were attributable to Jacobs's malfeasance as director and member of the Senior Loan Committee. (*See id.* ¶¶ 6–7). Plaintiff alleges that Jacobs used his position to obtain

approval for loans to uncreditworthy borrowers so that those borrowers could satisfy existing troubled loans owed to other banks in which Jacobs held an interest. (*See id.* ¶¶ 8–10).

The First Amended Complaint ("FAC") added Bank officers/directors Charlie Glenn, Daniel Dykes, Byron Waite, and Richard McCole as Defendants. (*See generally* First Am. Compl., June 13, 2013, ECF No. 24). Jacobs answered and filed crossclaims for indemnification and contribution against co-Defendants, a counterclaim against the FDIC for an unspecified cause of action arising out of the FDIC's alleged failure to mitigate damages by selling Bank assets in a commercially reasonable manner, and third-party claims against Barbara Sikora, Franklin Bishop, Walter Cooling for indemnity and contribution, against Jake Huber and Lillian R. Dangott for breach of guaranty, against Kathy Grant and Charles N. Grant for breach of guaranty, and against William V. Merrill, Kathy Lynn Merrill, and the Bill and Kathy Merrill Family Trust for breach of guaranty. (*See* Answer, Aug. 2, 2013, ECF No. 35).

Co-Defendants have settled for a total of $37,500: Glenn ($12,500); Dykes ($10,000); Waite ($7500); and McCole ($7500). (*See* Settlement Agreement 3 ¶ 2, June 13, 2013, ECF No. 40-1). The FDIC asks the Court to rule under state law that the settlement was made in good faith. It has also moved to strike certain affirmative defenses, to dismiss the counterclaim, and to strike two unauthorized surreplies. Jacobs has moved for leave to amend the Answer.

## II.     LEGAL STANDARDS

### A.     Good Faith Analysis

Under Nevada law, a court's declaration that a settlement is entered into in good faith has specific legal effects:

> 1. When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
>
>> (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and
>>
>> (b) It discharges the tortfeasor to whom it is given from all liability for contribution and for equitable indemnity to any other tortfeasor.

> 2. As used in this section, "equitable indemnity" means a right of indemnity that is created by the court rather than expressly provided for in a written agreement.

Nev. Rev. Stat. § 17.245. In 1983, a court of this District had anticipated that the Nevada Supreme Court would adopt the rationale of the California courts in interpreting "good faith" under the statute. *See Velsicol Chem. Corp. v. Davidson*, 811 P.2d 561, 563 (Nev. 1991) (quoting *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. 913, 927 (D. Nev. 1983) (Bechtle, J.) ("Factors to be considered by the Court in assessing whether a settlement is in good faith is [sic] the amount paid in settlement, the allocation of the settlement proceeds among plaintiffs, the insurance policy limits of settling defendants, the financial condition of settling defendants, and the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling defendants.") (alteration in original)). The Nevada Supreme Court, however, rejected the limitations of California's five-factor test, ruling instead that "determination of good faith [is] left to the discretion of the trial court based upon all relevant facts available, and . . . in the absence of an abuse of that discretion, the trial court's findings [will] not be disturbed." *Id.*

### B.     Dismissal

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely

conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  In other words, under the modern interpretation of Rule 8(a), a plaintiff must not only specify a cognizable legal theory (*Conley* review), but also must plead the facts of his own case so that the court can determine whether the plaintiff has any plausible basis for relief under the legal theory he has specified, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### III. ANALYSIS

#### A. Good Faith Settlement

The Court will not find the settlement to be in good faith.  First, the amount of the settlement is negligible compared with the damages sought against both the settling and non-settling Defendants.

Second, Plaintiff and the settling Defendants argue that the settling Defendants have few non-exempt assets. But the lists of non-exempt assets in the present motion are either suspiciously small or are too great to support the settlement. For example, Glenn admits to $114,443 in assets, yet will only be made to pay $12,500. Another settling Defendant, Waite, claims to have less than $1000 in non-exempt assets despite having been alleged to have been co-founder of the Bank and its one-time director and CEO. And these amounts do not take into consideration future income. Although the parties may settle for these amounts if they wish, the Court will not make a good faith finding with the result of preventing the remaining Defendant from seeking indemnity or contribution under these circumstances.

Third, and perhaps most importantly, the FAC accuses all Defendants of full liability, and to the extent liability can be apportioned based upon the allegations, it cannot be apportioned nearly as inequitably as the result the Settlement Agreement provides. The FAC consistently accuses "Defendants" of the wrongful acts. (*See* First Am. Compl. *passim*). This is not like an action where the claims are separated defendant-by-defendant, with some defendants accused of causing great harm and others accused of causing relatively minor harm via separate acts. All Defendants in this case are repeatedly accused of acting "jointly and in concert," causing undifferentiated harms. (*See id. passim*). All Defendants are accused of causing approximately $774,000 loss to the Bank via the Dayton Valley Land, LLC loan. (*See id.* ¶¶ 30–55). Glenn, Waite, and McCole (not Jacobs) are accused of causing approximately $599,000 loss to the Bank via the Building Energetix Corp. loan. (*See id.* ¶¶ 56–76). All Defendants are accused of causing approximately $616,000 loss to the Bank via the C. Grant Development loan. (*See id.* ¶¶ 77–88). All Defendants are accused of causing approximately $2,097,000 loss to the Bank via the Merrill Construction, Inc. loan. (*See id.* ¶¶ 89–111). In total, the FAC alleges approximately $4,086,000 in total losses caused by three of the settling Defendants, but approximately $599,000 *less* in total losses caused by Jacobs and Dykes. The "Claims for Relief" section of the FAC lists paragraphs detailing "Conduct Involved in Claims for Gross Negligence and Breach of Fiduciary Duty" Defendant-by-Defendant. (*See id.* ¶¶ 113–139). Each Defendant is accused of the same conduct in five form paragraphs. (*See id.*). Jacobs is only additionally accused of failing to disclose material facts relating to his personal interest in the Merrill

Construction, Inc. loan, wherein the Oklahoma banks in which Jacobs had an interest stood to gain to the detriment of the Bank. (*See id.* ¶ 118; *see also id.* ¶ 29).  But even assuming *arguendo* that Jacobs were therefore *solely* to blame for that particular loss—and the FAC as it stands accuses all Defendants of culpability for that loss—a putative second amended complaint still would only accuse Jacobs of jointly causing losses of approximately $3,487,000, whereas the settling Defendants would still be accused of having jointly caused losses of approximately $1,989,000, which is approximately 57% of the losses Jacobs would be alleged to have caused.  Yet the settling parties ask the Court to declare that a settlement whereby settling Defendants will pay approximately 1% of the damages still sought against Jacobs, and which would have the legal effect of preventing Jacobs from seeking indemnity or contribution from them, is equitable.

Fourth, there is good evidence of collusion on the face of the record itself.  The settling Defendants signed the Settlement Agreement on June 10 and 12, variously, and the FDIC signed it on June 13, 2013, the same day it filed the FAC, thereby adding settling Defendants to the case for the first time.  It is fairly clear under these circumstances that the purpose of the settlement was to defeat Jacobs's right to indemnification or contribution in exchange for token sums from the settling Defendants.

**B.    Motion to Strike**

Plaintiff asks the Court to strike certain affirmative defenses because they are without merit.  The Court denies the motion.  The Court will determine before trial wither the defenses have merit and should be included in the jury instructions, but the Court finds nothing " redundant, immaterial, impertinent, or scandalous" about the affirmative defenses here. *See* Fed. R. Civ. P. 12(f).  As for insufficiency, affirmative defenses need only be pled to the *Conley* standard, not to the *Twombly/Iqbal* standard. *See Ferring B.V. v. Watson Labs., Inc. (FL)*, Nos. 3:11-cv-481 et al., 2012 WL 607539, at *2–3 (D. Nev. Feb. 24, 2012) (Jones, C.J.).  This motion is better left for summary judgment.

**C.    Motion to Dismiss**

Plaintiff asks the Court to dismiss the Counterclaim.  The Court grants the motion.  The Counterclaim appears to contain three claims, though not enumerated.

First, Jacobs complains that Plaintiff failed to monitor the Bank for violations of law and stop the Bank and Defendants from violating the law.  The Court dismisses this claim.  The Court is aware of no statutory authority for such a claim.

Second, Plaintiff appears to allege that certain sales of Bank assets were not conducted in a commercially reasonable manner, such that Plaintiff failed to mitigate damages.  The Court agrees with Plaintiff that in the present context, this is more aptly characterized as an affirmative defense, not a claim.  If Plaintiff proves damages, Defendant must prove that Plaintiff unreasonably failed to mitigate them.

Third, Plaintiff appears to bring a defamation claim.  The Court dismisses this claim.  The FDIC is immune from defamation claims under the intentional tort exception to the Federal Tort Claims Act.  *See* 28 U.S.C. § 2680(h).

### D.    Motion For Leave to File Amended Answer

Jacobs asks the Court for leave to file an amended answer.  The proposed amendment would alter the counterclaims and affirmative defenses in response to the pending motions to dismiss and strike.  Because the Court has found that amendment of the counterclaims would be futile and that the affirmative defenses are already sufficiently stated (regardless of the merits) under Rule 8(c), it denies the motion.

### E.    Motions to Strike Pleadings

The Court grants Plaintiff's motions to strike unauthorized surreplies filed by Jacobs.

///
///
///
///
///
///
///
///
///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Good Faith Determination (ECF No. 39) is DENIED.

IT IS FURTHER ORDERED that the Motion to Strike Affirmative Defenses (ECF No. 47) is DENIED.

IT IS FURTHER ORDERED that the Motion to Dismiss Counterclaims (ECF No. 59) is GRANTED.

IT IS FURTHER ORDERED that the Motion For Leave to File Amended Answer (ECF No. 61) is DENIED.

IT IS FURTHER ORDERED that the Motions to Strike (ECF Nos. 72, 75) are GRANTED, and the improper surreplies (ECF Nos. 68, 69) are STRICKEN.

IT IS SO ORDERED.

Dated:  This 26th day of November, 2013.

_____
ROBERT C. JONES
United States District Judge