## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

FEDERAL DEPOSIT INSURANCE CORPORATION, AS
RECEIVER OF CARSON RIVER COMMUNITY BANK
    Plaintiff and Counter Claim Defendant,
   vs.
JAMES M. JACOBS, Defendant and Counter Claimant,
CHARLIE GLENN, DANIEL DYKES, BYRON WAITE,
AND RICHARD MCCOLE
    Defendants,
JAMES M. JACOBS, Cross Claimant
   vs.
DANIEL DYKES, CHARLIE GLENN, RICHARD
MCCOLE, AND BYRON WAITE
    Cross Claim Defendants
AND
JAMES M. JACOBS, Third Party Plaintiff
   vs.
BARBARA SIKORA, FRANKLIN M. BISHOP, WALTER
"TOBY" COOLING, JAKE HUBER, LILLIAN R.
DANGOTT, KATHY GRANT, CHARLES GRANT,
KATHY MERRILL, WILLIAM MERRILL, BILL and
KATHY MERRILL FAMILY TRUST
   Third Party Defendants.

Case No.:  3:13-CV-00084-RCJ (VPC)

## ORDER

This matter comes before the court to consider the Joint Stipulated Protocol for the

Production of Electronically Stored Information, and for good cause shown, it is ordered that

each of the parties and their respective counsel shall be governed by the terms and conditions

contained in the Joint Stipulated Protocol for the Production of Electronically Stored

Information.

IT IS SO ORDERED on this 19th day of December, 2013.

_____
United States Magistrate Judge

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF CARSON RIVER COMMUNITY BANK<br>    Plaintiff and Counter Claim Defendant,<br>    vs.<br>JAMES M. JACOBS, Defendant and Counter Claimant,<br>CHARLIE GLENN, DANIEL DYKES, BYRON WAITE, AND RICHARD MCCOLE<br>    Defendants,<br>JAMES M. JACOBS, Cross Claimant<br>    vs.<br>DANIEL DYKES, CHARLIE GLENN, RICHARD MCCOLE, AND BYRON WAITE<br>    Cross Claim Defendants<br>AND<br>JAMES M. JACOBS, Third Party Plaintiff<br>    vs.<br>BARBARA SIKORA, FRANKLIN M. BISHOP, WALTER "TOBY" COOLING, JAKE HUBER, LILLIAN R. DANGOTT, KATHY GRANT, CHARLES GRANT, KATHY MERRILL, WILLIAM MERRILL, BILL and KATHY MERRILL FAMILY TRUST<br>    Third Party Defendants. | Case No.: 3:13-CV-00084-RCJ (VPC) |

## JOINT STIPULATED PROTOCOL FOR THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION

Plaintiff, the Federal Deposit Insurance Corporation, as Receiver for Carson River Community Bank ("FDIC-R"), and Defendants James M. Jacobs, Charlie Glenn, Daniel Dykes, Byron Waite, and Richard McCole (collectively, the "Defendants," and together with the FDIC-R, the "Parties"), by and through their respective undersigned counsel submit the following Stipulated Protocol for the Production of Electronically Stored Information ("Protocol"):

I.    **General Provisions**

1.    The Parties have conferred regarding the expeditious production of electronically stored information ("ESI") in their possession, custody, or control, agree to the following, and respectfully move the Court to enter an Order approving the same.

2.      This Protocol, including the provisions set forth in Exhibit "A," applies to the ESI

provisions of Fed. R. Civ. P. 16, 26, 33, 34, and/or 37.  Insofar as it relates to ESI, this Protocol

also applies to Fed. R. Civ. P. 45, if agreed to by the recipient of any subpoena issued pursuant to

that rule, in all instances in which the provisions of Fed. R. Civ. P. 45 are the same as, or

substantially similar to, the provisions of Fed. R. Civ. P. 16, 26, 33, 34, and/or 37.  Nothing

contained herein modifies Fed. R. Civ. P. 45 and, specifically, the provision of Rule 45(c)(2)(B)

regarding the effect of a written objection to inspection or copying of any or all of the designated

materials or premises.

3.      In this Protocol, the following terms have the following meanings:

A.      "Metadata" means: (i) information embedded in a Native File, including

but not limited to the information identified in Exhibit "A," that is not ordinarily viewable or

printable from the application that generated, edited, or modified such Native File; (ii)

information generated automatically by the operation of a computer or other information

technology system when a Native File is created, modified, transmitted, deleted, or otherwise

manipulated by a user of such system; and (iii) information created by the processing of a file

into the format used by a reviewable database (e.g., Relativity).  Metadata is a subset of ESI.

B.      "Load File(s)" means the file necessary to load data into a reviewable

database.  A load file can, for example, specify what individual pages belong together as a

document, what attachments are included with a document, where a document begins and ends,

and what metadata is associated with a document.

C.      "Native File(s)" means ESI in the electronic format of the software

application in which such ESI is normally created, viewed, and/or modified.  Native Files are a

subset of ESI.

D.      "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems.  In the absence of agreement of the Parties or order of Court, a Static Image, when provided, should be provided in Tagged Image File Format (TIFF or TIFF files).   If a TIFF file cannot be created, then the Static Image should be provided in Portable Document Format (PDF).   If Load Files or Optical Character Recognition text files (OCR files) were created in the process of converting Native Files to Static Images, or if Load Files may be created without undue burden or cost, Load Files shall be provided as set forth in Exhibit "A".

4.      Pursuant to Federal Rule of Evidence 502(b) and (d), production of documents and ESI in this case shall be without prejudice to and shall not waive, for purposes of this case or otherwise, any attorney-client privilege, work product protection, or other applicable privilege or protection that otherwise would apply whether specifically covered by these rules or not.  Upon disclosure by any producing party or subpoena recipient that it inadvertently disclosed materials it believes to be protected by privilege, that party or recipient shall promptly notify all Parties in writing of the disclosure, identify the document that contains or consists of material believed to be privileged, and immediately take steps to prevent further disclosure of such material. Similarly, if any Party receives material from a producing Party or subpoena recipient that it reasonably believes may be protected by the attorney-client privilege, work-product doctrine, or any other privileges or protections, the receiving Party shall notify the producing Party or subpoena recipient.  The provisions of Fed. R. Civ. P. 26(b)(5)(B) shall govern the Parties and any subpoena recipient that produces documents subject to this Protocol with respect to any such material. To the extent the Parties or subpoena recipients disagree regarding the application of these principles to any such material, or challenge the privileged nature of such material, the

receiving Parties shall not make use of the material in question until the matter is resolved by the Court.

5.      Nothing in this Protocol shall preclude any Party from seeking any documents in discovery.   However, except for good cause shown, further agreement of the Parties, or as provided in this Protocol, provisions set forth in Exhibit "A" shall govern the format of production.

6.      Each Party shall bear all costs associated with the identification, processing, and production of its own documents and ESI unless otherwise specifically agreed between the Parties or ordered by the Court.

7.      If a Party is actually aware of a document that has been specifically identified and is (1) responsive to any other Party's requests for production, (2) not subject to an objection, (3) not identified by applying agreed upon search terms, and (4) intended to be used in deposition or trial, the Party shall produce that document.   If a Party intends to use such a document at deposition, the Party shall produce that document to all other Parties no later than 2 days before the scheduled deposition.

## II.      FDIC's Production

8.      FDIC-R is in possession of ESI related to Carson River Community Bank ("CRCB ESI").   The CRCB ESI is maintained by FDIC-R in Data Management Services (DMS) databases (the "DMS Databases").   The CRCB ESI includes, but is not limited to, the following unstructured databases: (1) Forensic Data (including forensically collected e-mail); (2) Scanned Documents; (3) Non-Forensic E-mail; (4) Network Fileshares; and (5) Proprietary Banking System Images and Text Files.   The FDIC represents that the ESI in items (1) and (3) is currently text searchable only and agrees to process the ESI in items (1) and (3) for the custodians agreed

upon by the Parties such that the data in items (1) and (3) is fully searchable for the agreed-upon custodians, provided that such custodians have "custodial" records available in the aforementioned collections. The FDIC represents that the data in item (2) has been subjected to optical character recognition processing and that it is searchable based on that processing. The data contained in items (1) through (3) is referred to herein as the "Searched Repositories." The FDIC further agrees to provide Defendants with a directory listing for the Network Fileshares.

9. Upon review of the documents made available and/or produced, if Defendants contend that they require searches of DMS Databases that are not text-searchable, the Parties will discuss and attempt to reach an agreement regarding the further processing of these databases and the costs involved in doing so, as well as any subsequent production costs for such databases. If the Parties are unable to reach an agreement regarding further processing of the DMS Databases that currently are not text-searchable, the Parties will have the right to address this issue with the Court. Any issues relating to the DMS Databases that currently are not text-searchable will not be subject to this agreement, except with respect to the procedure addressed in this paragraph, but will instead be addressed under the general rules addressing the production of ESI.

10. As it relates to ESI in the possession or control of FDIC-R, this Protocol applies only to CRCB ESI as defined herein. Defendants reserve the right to seek additional ESI in the possession, custody, or control of the FDIC-R, and nothing contained herein shall be deemed to constitute a waiver of their right to do so. FDIC-R reserves the right to object to any efforts to seek any such additional ESI, to the extent it exists.

11. Subject to the terms of this Protocol, including but not limited to Paragraph 10, and the Protective Order (Docket No. 88), and pursuant to an Order of the Court which shall be

Case 3:13-cv-00084-RCJ-VPC   Document 94-1   Filed 12/10/13   Page 7 of 15

deemed to approve this Protocol, FDIC-R shall produce relevant, non-privileged documents from databases (1) through (3) in accordance with the procedure set forth in this Protocol and in the format specified in Exhibit "A," attached hereto.

12.     In order to efficiently identify data that is potentially relevant to the issues in this case, the parties shall follow the following approach to the production of data from the FDIC-R, including the development and application of search terms to the Searched Repositories.

A.     First, the Parties shall collectively agree upon a reasonable set of search terms to run across the Searched Repositories.  For purposes of the Forensic Data and Non-Forensic email only, the Parties also agree to identify a set of custodians, from among those for whom the FDIC-R has Forensic Data and Non-Forensic email, whose Forensic Data and Non-Forensic email shall be searched in addition to the remaining data in the Search Repositories.

B.     Second, the Parties shall test their proposed search terms by having FDIC-R apply them to the Searched Repositories and providing search term hit reports to Defendants in a good faith attempt to establish final agreed-upon search terms.  FDIC-R will repeat this process upon reasonable request for up to two (2) additional iterations of suggested search terms and hit reports.  FDIC-R shall have the right to object to the application of any proposed search terms or any selected custodians, and the Parties reserve the right to seek the Court's intervention if they are unable to resolve the objection after conferring in good faith.  In order to facilitate the good faith negotiation of search terms among the Parties, with respect to any search term requested by the Defendants but objected to by FDIC-R on the grounds that it is overly broad or unduly burdensome, FDIC-R shall provide search term hit reports to the Defendants that identify the number of unique documents that hit upon each identified search term requested by the Defendants and objected to by FDIC-R.

C.     Third, after the Parties have agreed upon search terms or established search terms with the assistance of the Court ("Collaborative Search Terms"), FDIC-R shall apply the Collaborative Search Terms to the documents in databases (1) through (3) and, at its option, may perform an initial review of the documents captured for privilege, pursuant to the Federal Rules of Civil Procedure.  Notwithstanding this option, the production of any documents that are privileged or statutorily protected from disclosure shall not  create a waiver of any protection otherwise warranted with respect to the documents.  The Parties agree that, where feasible, certain searches will be run on the CRCB ESI with the date restriction from January 1, 2004 through the date of closing of Carson River Community Bank on February 26, 2010.  The date restriction will apply to the created date for loose files and the time sent for parent email in email files.  The files that are identified by applying the Collaborative Search Terms to the Searched Repositories will be de-duplicated as set forth in Exhibit "A" and, subject to the FDIC-R's secondary search for Protected Material, produced to Defendants in native format, with applicable metadata and load files, in accordance with Exhibit "A", for Defendants' use in the hosting and review system of their choosing.

13.     FDIC-R may withhold documents or families of documents determined or presumed to constitute Protected Material or that are otherwise not discoverable from the data produced to Defendants.  If an otherwise responsive document contains Protected Material, the FDIC-R agrees to redact those portions of the document that contain Protected Material and produce the remainder of the document, subject to the provisions of the Protective Order (Docket No. 88) as it relates to Personal Information as defined therein.  By producing a document to Defendants, the FDIC-R does not waive any protection applicable to a particular document and

Case 3:13-cv-00084-RCJ-VPC   Document 94-1   Filed 12/10/13   Page 9 of 15

retains the ability to withhold or claw back any document consistent with the Clawback Order

(Docket No. ___) and Paragraph 4 of this Protocol.

14.    As more fully discussed in Exhibit "A", production of documents shall occur in

native format, unless redactions are necessary to address Protected Material.  When the Parties

wish to introduce (e.g., at deposition or at trial) or cite in a pleading filed with the Court a

document produced in native format, the Parties must ensure that the document's unique

identification number (i.e., DocID) is visible, as specified in Exhibit A.  The Parties specifically

acknowledge that any documents that are publicly filed must comply with the  Protective Order

(Docket No. 88) as well as all applicable laws and regulations related to the confidentiality of

and protection for bank borrower information, and Federal Rule of Civil Procedure 5.2.

15.    In the event that a dispute arises among the Parties regarding documents identified

for production by the Defendants but withheld by FDIC-R, or an issue arises regarding the

timeliness of FDIC-R's production, the Parties shall meet and confer and determine whether

there are ways to resolve the issue without Court intervention.  In the event that the Parties are

unable to reach agreement regarding this issue, all Parties reserve the right to raise the issue with

the Court.  The parties agree to communicate jointly with the Court to the extent possible to

avoid any ex parte communications regarding the merits of the case or discovery objections.

## III.    Defendants' Production

16.    Defendants shall identify and produce all non-objectionable, non-privileged paper

documents and ESI that are responsive to Plaintiff's discovery requests in the format specified in

Exhibit "A."  Defendants will disclose to Plaintiff their intended approach to identify responsive

documents, including if they believe that the application of search terms to electronic repositories

would be an efficient and effective method of identifying relevant documents.  Plaintiff and

Defendants shall meet and confer to determine the sufficiency of Defendants' proposed approach, including whether search terms should be applied to a particular Defendant(s)' ESI. If the Parties agree to use search terms to cull Defendants' data, they will meet and confer regarding appropriate search terms, including the exchange of search term hit reports. The parties reserve the right to raise any issue with the Court in the event that they are unable to reach agreement.

REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

## Exhibit "A" to ESI Protocol

**Form of Production for Email**

All electronic email from Windows-Based ESI ("WESI") shall be produced complete with full text extracts and the following fields of Metadata, to the extent the Metadata is available:

1.  From (Name)

2.  Author Meta (Last editor of attachment/e-doc)

3.  Bates Begin

4.  Bates End

5.  Bates Attach Begin

6.  Bates Attach End

7.  BCC

8.  CC

9.  Sent To

10. COMPPATH (Complete Filename and path)

11. Custodian (Natural person or device in possession of the record at the time of collection)

12. Group_Custodian (Name(s) of custodian(s) with exact copy of file before de-duplication)

13. Relativity ID (Unique Relativity identifier – Document Control Number)

14. Group Identifier (Full range of Relativity records between beginning parent document and ending child document)

15. Document Type (Field in Relativity describing the family relationship (parent or attachment) of a record

16. Extracted Text (Text of e-mails, nested e-mail body, or raw text from images, edocs, or attachments)

17. MD5 Hash

18.    Application (Program commonly used to access the record)

19.    Subject (e-mail subject line)

20.    Title Meta (Title of attachment/standalone edoc metadata)

21.    Sent Date (Date e-mail was sent from sender)

22.    Sent Time (Time e-mail was sent from sender)

23.    Last Modified Date (Full date edoc was modified before saving/sending)

Electronic mail shall be produced along with attachments to the extent the message and/or any attachment is responsive, relevant, and not privileged. As a general matter, subject to specific review, a message and its attachments(s) shall not be withheld from production based on the fact that one or more attachments are privileged, irrelevant, or non-responsive.  To the extent the message and/or one or more attachments is privileged or non-responsive, the responsive, non-privileged documents shall be produced along with placeholders indicating whether the accompanying record was withheld as non-responsive or privileged.  All Parties should confirm that their ESI is Windows-based or, if not, identify the other forms of ESI within their possession, custody, and control.

**Form of Production for Other WESI**

All other WESI (including attachments to electronic mail) shall be produced as Static Images complete with full text extracts and the following fields of Metadata, to the extent the Metadata is available and does not require additional processing:

1.    Author Meta (Last editor of attachment/e-doc)

2.    Bates Begin

3    Bates End

4.    Bates Attach Begin

5.    Bates Attach End

6.    COMPPATH (Complete Filename and path)

7.    Custodian (Natural person or device in possession of the record at the time of collection)

Case 3:13-cv-00084-RCJ-VPC   Document 94-1   Filed 12/10/13   Page 13 of 15

8.      Group_Custodian (Name(s) of custodian(s) with exact copy of file before de-duplication)

9.      Relativity ID (Unique Relativity identifier – Document Control Number)

10.     Group Identifier (Full range of Relativity records between beginning parent document and ending child document)

11.     Document Type (Field in Relativity describing the family relationship (parent or attachment) of a record)

12.     Extracted Text (Text of e-mails, nested e-mail body, or raw text from images, edocs, or attachments)

13.     MD5 Hash

14.     Application (Program commonly used to access the record)

15.     Title Meta (Title of attachment/standalone edoc metadata)

16.     Created Date (Contains the date the edoc was created)

17.     Created Time (Contains the time the edoc was created)

18.     Last Modified Date (Full date the edoc was modified before saving/sending)

**Production of Native Files**

Generally, all WESI, including emails and non-email documents, shall be produced by the Parties as Native Files in Load Files. Exceptions may include documents imaged for redaction purposes prior to release for review and production, or documents scanned by the FDIC-R after being named receiver for Carson River Community Bank. Each WESI Native File produced will have a unique Doc ID (i.e., Relativity ID) generated and included within the production as a separate metadata field within the Data ("DAT") Load File. The Doc ID shall be the default unique document identification number.

**Structured Data**

To the extent a response to discovery requires production of discoverable electronic information contained in a database or certain scheduling programs, the producing party may comply by querying the database for discoverable information and generating a report in a

reasonably usable and exportable electronic file (e.g., Excel or CSV format). The first line of the file will, to the extent possible, show the column headers for each field of data included. The parties shall meet and confer to finalize the appropriate data extractions and production format for specific information contained in a database.

### Load Files

All WESI shall be produced along with an IPRO, Opticon, Relativity, and/or Summation DII load file indicating Bates numbers and document breaks. Metadata shall be produced in Concordance DAT file format, DII format, and summary text file for Summation, and XML format, and extracted full text shall be provided in TXT file format at the document level. Non-Windows-Based Applications and Data shall be subject to the same production requirements to the extent technically and legally feasible.

### Duplicates

To avoid the production of more than one copy of a particular unique item, the Parties shall use industry standard MD5 (or SHA-1) hash values within (1) all emails identified for production, and (2) all loose electronic files identified for production. The Parties will not de-duplicate attachments to emails against loose electronic files. The Parties shall also produce a field listing all custodians of any de-duplicated copies of an email or other electronic document.

### Other Methods to Streamline Discovery

The Parties agree to meet and confer in good faith about any other technology or process that a producing party proposes to use to streamline the culling, review, and production of ESI (e.g., email threading, near de-duplication, technology assisted review). The Parties shall make reasonable good faith efforts to resolve any objections to the use of such technology or process before seeking relief from the Court.

### Production Media

Documents shall be produced on external hard drives or readily accessible computer or electronic media, e.g., CDs, DVDs, or flash or thumb drives ("Production Media"). All Production Media should have the following five directories: (1) IMAGES for the images; (2)

DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; (4) NATIVES for any native Excel files or Exception Documents; and (5) Load Files.  The Production Media shall identify: (a) the producing Party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

### Color

Where the original of a produced document is in color, and color is material to the interpretation of the document, the Receiving Party may request that the document be produced in color (whether electronic or paper).

### Physical Documents

Documents that exist solely in physical hard-copy format shall be converted to Static Image (.TIFF) and produced following the same protocols outlined above.  The metadata shall indicate document breaks.  The ".tiff" files shall be subject to an Optical Character Recognition ("OCR") process, and the extracted OCR text will be produced as separate metadata.

### Inaccessible Data

The Parties need not collect documents stored on disaster recovery backup tapes unless a showing of specific need is made.