UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORP., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JAMES MICHAEL JACOBS et al., ) <br> ) <br> Defendants. ) <br> _____ ) | 3:13-cv-00084-RCJ-VPC <br><br> ORDER |

This case arises out of the failure of a bank due to alleged malfeasance by its directors and officers in approving bad loans. Pending before the Court is a Motion for Summary Judgment (ECF No. 153). For the reasons given herein, the Court denies the motion.

## I.   FACTS AND PROCEDURAL HISTORY

On February 26, 2010, the Financial Institutions Division of the Nevada Department of Business and Industry revoked the charter of non-party Carson River Community Bank (the "Bank") and appointed Plaintiff Federal Deposit Insurance Corp. (the "FDIC") as receiver pursuant to 12 U.S.C. § 1821(c). (*See* Compl. ¶¶ 4–5, Feb. 22, 2013, ECF No. 1). The FDIC sued Defendant James M. Jacobs in this Court for gross negligence and breach of fiduciary duties, alleging that approximately $3.6 million of the Bank's losses were attributable to Jacobs's malfeasance as director and member of the Senior Loan Committee. (*See id.* ¶¶ 6–7). The First Amended Complaint ("FAC") added Bank officers/directors Charlie Glenn, Daniel Dykes, Byron Waite, and Richard McCole as Defendants. (*See generally* First Am. Compl., June 13, 2013, ECF No. 24). Jacobs

answered and filed crossclaims for indemnification and contribution against co-Defendants, a counterclaim against the FDIC for an unspecified cause of action arising out of the FDIC's alleged failure to mitigate damages by selling Bank assets in a commercially reasonable manner, and third-party claims against Barbara Sikora, Franklin Bishop, Walter Cooling for indemnity and contribution, against Jake Huber and Lillian R. Dangott for breach of guaranty, against Kathy Grant and Charles N. Grant for breach of guaranty, and against William V. Merrill, Kathy Lynn Merrill, and the Bill and Kathy Merrill Family Trust for breach of guaranty. (*See* Answer, Aug. 2, 2013, ECF No. 35).

Jacobs' Co-Defendants conditionally settled for a total of $37,500: Glenn ($12,500); Dykes ($10,000); Waite ($7500); and McCole ($7500). (*See* Settlement Agreement 3 ¶ 2, June 13, 2013, ECF No. 40-1). The FDIC asked the Court to rule under state law that the settlement was made in good faith. The Court denied that motion. The FDIC also moved to strike certain affirmative defenses, to dismiss the counterclaim, and to strike two unauthorized surreplies. The Court granted those motions. Jacobs moved for leave to amend the Answer. The Court denied that motion and later reconsidered in part, permitting Jacobs to amend his Answer to more particularly identify the legal bases of his defenses, although the Court noted such amendment would not be necessary to preserve those defenses. The Court later granted motions to voluntarily dismiss Defendants Dykes, Waite, and McCole and Third-Party Defendants Huber and Dangott, as well as Plaintiff's motion to file a second amended complaint omitting the dismissed Defendants. Plaintiff filed the Second Amended Complaint ("SAC").

The SAC accuses Defendants Jacobs and Glenn of approving, as two of the five members of the Bank's Senior Loan Committee (the "Committee"), a $4 million loan (the "Loan") to Merrill Construction, Inc. ("Merrill"), in order to permit Merrill to refinance its loan with a non-party bank, knowing that the proceeds would be used to continue the development of twenty-five residential lots in Minden, Nevada (the "Property") at a time when it was known that real estate developments were no longer profitable in the area. (*See* Second Am. Compl. ¶¶ 14–18, 29, June 5, 2014, ECF No. 140). The SAC alleges that Defendants knew of the insolvency of the borrower and the inability of the guarantors to guaranty the Loan and that they used improper methods of appraisal and assessment.

(*See id.* ¶¶ 20–28). Nevertheless, Jacobs, Glenn, and the rest of the Committee approved the Loan on August 23, 2007). (*Id.* ¶ 46).

Because the Loan amount exceeded the Bank's single-borrower limit, it was necessary for the bank to sell "loan participations" to other borrowers. (*Id.* ¶ 30). After four independent banks rejected Glenn's offers to participate, Glenn and Jacobs offered loan participations to three Oklahoma banks the boards of directors on which Jacobs sat and in which Jacobs and his family held majority interests. (*Id.* ¶¶ 30–31). Two of the Oklahoma banks, Lakeside Bank of Salina ("Lakeside") and Bank of Locust Grove ("Locust") recognized the risk of the Loan and demanded "last in, first out" clauses in their $250,000 loan participations, i.e., although they were the last to contribute money to the loan, they would be the first repaid. (*Id.* ¶ 33). Jacobs and Glenn facilitated and approved these loan participations, although the other members of the Committee did not realize that the loan participations granted Lakeside and Locust the right to be paid first on the Loan in the event of default. (*Id.* ¶¶ 33–34). City National Bank ("City"), the prior lender, also agreed to participate in the Loan in the amount of $500,000 conditioned on a "last in, first out" clause. (*Id.* ¶ 40). Although City knew the loan was troubled, this arraignment still reduced City's maximum exposure from $3.5 million to $500,000. (*Id.*). Even still, City demanded a bulk value appraisal before it would agree to participate, and the November 5, 2007 bulk value appraisal (the "Appraisal") received by Glenn was $3,050,000, almost $1 million less than the $4 million Loan. (*Id.* ¶ 41). Glenn did not share the Appraisal, which indicated a loan-to-value ratio of 131%, with the other members of the Committee or the Board. (*Id.* ¶¶ 42–43). Even the retail appraisal of $5 million Glenn had previously obtained resulted in a loan-to-value ratio of 80%, which was inadequate under both the Bank's policy and federal regulations. (*Id.* ¶ 21).

In January 2009, Merrill's impending default was clear, and the Committee (from which Glenn and Jacobs had since resigned) realized upon reviewing the Loan documents that Lakeside, Locust, and the previous lender, City National Bank ("City") were entitled to a collective $1 million before the Bank was entitled to anything. (*Id.* ¶ 35).[1] Upon being informed of this in May 2009, the

---

[1] City apparently had a $500,000 last in, first out agreement with the Bank. (*See id.*). The priority of repayment as between Lakeside, Locust, and City is not alleged.

Bank's Board of Directors (the "Board") wrote Jacobs explaining that neither the Board nor the rest of the Committee had been informed of the "last in, first out" clauses written into the loan participations by Jacobs and Glenn and implying his malfeasance. (*Id.* ¶ 36). Jacobs responded by email denying knowledge of the "last in, first out" clauses. (*Id.* ¶ 37). Although Plaintiff has evidence that this denial was false, the Board believed Jacobs' denials at the time and did not take any further action. (*Id.* ¶¶ 38–39).

The Bank was the only bidder at the foreclosure sale, and it bought the Property for a credit bid of $1.8 million. (*Id.* ¶ 45). The Bank declined to seek a deficiency judgment because it knew neither the borrower nor the guarantors could satisfy such a judgment. (*Id.*). The total losses to the Bank are approximately $2 million. (*Id.* ¶ 47). The FDIC has taken receivership of the Bank and has sued Jacobs and Glenn for gross negligence under 12 U.S.C. § 1821(k). The FDIC has listed two counts in the SAC, alleging gross negligence against both Jacobs and Glenn in count one based on a breach of their duty of care, and alleging gross negligence against Jacobs in count two based on a breach of his duty of loyalty.

Jacobs asked the Court to stay the case based on an Oklahoma state court's impending imposition of a receivership upon non-party Red Rock Insurance Co. ("Red Rock"). The Court denied the motion because the issue was irrelevant in the present case.[2] Jacobs, but not Glenn, has moved for defensive summary judgment.

## II. LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is

---

[2] On the day the Court denied the motion to stay in the present case, Jacobs again asked the Court to stay the present case because the Court had stayed another case pending in this Court where Red Rock had sued certain parties in this Court for a declaratory judgment of non-liability under an insurance policy. The Court stayed that case until December 19, 2014 because Red Rock had been placed into receivership until that date under Oklahoma law. The Court denies Jacobs' motion to stay. This Court's stay of the case where Red Rock is the plaintiff does not change the fact that the present case does not turn upon anything that may happen in that case.

4

sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and

determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.  ANALYSIS

> A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation–
>
> (1) acting as conservator or receiver of such institution,
>
> (2) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed by such receiver or conservator, or
>
> (3) acting based upon a suit, claim, or cause of action purchased from, assigned by, or otherwise conveyed in whole or in part by an insured depository institution or its affiliate in connection with assistance provided under section 1823 of this title,
>
> for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

12 U.S.C. § 1821(k). The FDIC may therefor bring the present action as receiver to recover damages to the Bank resulting from Defendants' gross negligence or intentional malfeasance, as defined by Nevada law. Under Nevada law, officers and directors of a corporation owe duties of care and loyalty:

> The board's power to act on the corporation's behalf is governed by the directors' fiduciary relationship with the corporation and its shareholders, which imparts upon the directors duties of care and loyalty. In essence, the duty of care consists of an obligation to act on an informed basis; the duty of loyalty requires the board and its directors to maintain, in good faith, the corporation's and its shareholders' best interests over anyone else's interests.

*Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1178 (Nev. 2006) (footnotes omitted).

### A.  Count 1:  The Duty of Care

In Nevada, the business judgment rule defines the line between unactionable ordinary negligence and actionable gross negligence. *See id.* at 1184 ("With regard to the duty of care, the business judgment rule does not protect the gross negligence of uninformed directors and officers.").

Unlike other states, Nevada does not define the duty of care with an objective standard such as the standard of an ordinarily prudent person, *see* Keith Paul Bishop, *Nevada law of Corporations & Business Organizations* § 8.15, at 8-26 (1998), but officers and directors must act "on an informed basis," *Shoen*, 137 P.3d at 1178.  The Nevada Legislature codified the business judgment rule in 1991. *See id.* at 1179 (citing Nev. Rev. Stat. § 78.138 ("Directors and officers shall exercise their powers in good faith and with a view to the interests of the corporation."))[3]  Plaintiff has adduced evidence that Jacobs ignored Merrill's insolvency and declining profitability, the insufficient funds of the guarantors, the fact that the original lender refused to refinance the loan, the declining real estate market, and other warning signs. (*See* DeVolld Rep., ECF No. 171-1).  Jacobs also voted for the Bank to approve the Loan despite knowing other loan participants were entitled to the first $1 million recovered in the case of a default, such that the Bank was likely to lose at least 25% of the $4 million Loan. (*See* Brown Dep. 16–18, ECF No. 167-1, at 118 (noting that Jacobs was present via video conference during the Lakeside Board of Directors meeting to approve the loan participation under the last in, first out clause); Roach Dep. 11–12, ECF No. 167-1, at 139 (same as to Locust's meeting))[4]  This evidence is sufficient for a jury to find that Jacobs did not act "in good faith and with a view to the interests of the [Bank]," as required by Nevada's statutory definition of the business judgment rule.  Plaintiff is therefore not entitled to summary judgment against the claim for a breach of the duty of care, even assuming he could satisfy his initial burden as to that claim.

**B.  Count 2:  The Duty of Loyalty**

A breach of the duty of loyalty requires intentional misconduct, and such a breach is therefore actionable under § 1821(k). *Shoen*, 137 P.3d at 1184 ("[D]irectors and officers may only be found personally liable for breaching their fiduciary duty of loyalty if that breach involves intentional

---

[3]The Court disagrees with Plaintiff that Nevada applies a "reasonably prudent person" standard in the context of the business judgment rule. *See Horowitz v. Sw. Forest Indus., Inc.* 604 F. Supp. 1130, 1134 (D. Nev. 1985) (Reed, J.).  Nevada's 1991 statute controls the duty of care of officers and directors, even assuming the Nevada Supreme Court would otherwise have adopted the majority rule cited in the 1985 federal case.

[4]The evidence shows only Glenn knew of the bulk appraisal indicating the Property was potentially undersecured by approximately $1 million; Glenn could not recall informing Jacobs of the appraisal. (Glenn Dep. 49–52, Mar. 6, 2014, ECF No. 167-1, at 86).

7

misconduct, fraud, or a knowing violation of the law."). Plaintiff has adduced evidence that Jacobs knowingly withheld from the rest of the Committee the "last in, first out" clauses in the loan participations of Lakeside and Locust and his personal interest in those banks. (*See* Brown Dep. 16–18; Roach Dep. 11–12; Jacobs Aff. ¶¶ 1–2, ECF No. 153, at 36 (confirming his interest in Lakeside and Locust)). That is sufficient for a jury to find that Jacobs acted with intentional disregard for his duty of loyalty to the Bank under Nevada law. Plaintiff is therefore not entitled to summary judgment against the claim for a breach of the duty of loyalty, even assuming he could satisfy his initial burden as to that claim.

Jacobs argues that "gross negligence" requires the lack of even a slight degree of care. But this is only the case in garden variety gross-negligence cases. In the context of the duties of officers and directors of a corporation, the standard is controlled by the statute cited, *supra*. Jacobs also argues that Plaintiff does not allege any intentional misconduct, but that is plainly untrue. Plaintiff has alleged "gross negligence," but that is simply the minimum standard for liability under the statute. Liability also lies for intentional misconduct, and Plaintiff has clearly accused Jacobs of liability for violations of Nevada's duties of care and loyalty, whatever those precise standards are. As the Court has noted, *supra*, either requires at least gross negligence. Plaintiff alleges a breach of the duty of loyalty, i.e., material omissions and a conflict of interest, which is intentional misconduct, as well as a breach of the duty of care based on gros negligence in approving a loan that was undersecured and where other lenders were in first position. That is enough for a jury to find gross negligence. Nor does section 162.020(2) prevent a finding of a lack of good faith in this case, because there is sufficient evidence to find that Jacobs did not act honestly, even assuming that provision applies here. In summary, Jacobs' arguments that he was not grossly negligent or worse must be made to the jury.

///
///
///
///
///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 153) and the Motion to Stay (ECF No. 161) are DENIED.

IT IS SO ORDERED.

Dated this 5th day of November, 2014.

_____
ROBERT C. JONES
United States District Judge