UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORP., ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | 3:13-cv-00084-RCJ-VPC | |
| ) | | |
| JAMES MICHAEL JACOBS et al., ) | **ORDER** | |
| ) | | |
| Defendants. ) | | |
| _____ ) | | |

This case arises out of the failure of a bank due to alleged malfeasance by its directors and officers in approving bad loans. Pending before the Court is a Motion to Reconsider (ECF No. 184). For the reasons given herein, the Court denies the motion.

## I.     FACTS AND PROCEDURAL HISTORY

On February 26, 2010, the Financial Institutions Division of the Nevada Department of Business and Industry revoked the charter of non-party Carson River Community Bank (the "Bank") and appointed Plaintiff Federal Deposit Insurance Corp. (the "FDIC") as receiver pursuant to 12 U.S.C. § 1821(c). (*See* Compl. ¶¶ 4–5, Feb. 22, 2013, ECF No. 1). The FDIC sued Defendant James M. Jacobs in this Court for gross negligence and breach of fiduciary duties, alleging that approximately $3.6 million of the Bank's losses were attributable to Jacobs's malfeasance as director and member of the Senior Loan Committee. (*See id.* ¶¶ 6–7). The First Amended Complaint ("FAC") added Bank officers/directors Charlie Glenn, Daniel Dykes, Byron Waite, and Richard McCole as Defendants. (*See generally* First Am. Compl., June 13, 2013, ECF No. 24). Jacobs

answered and filed crossclaims for indemnification and contribution against co-Defendants, a counterclaim against the FDIC for an unspecified cause of action arising out of the FDIC's alleged failure to mitigate damages by selling Bank assets in a commercially reasonable manner, and third-party claims against Barbara Sikora, Franklin Bishop, Walter Cooling for indemnity and contribution, against Jake Huber and Lillian R. Dangott for breach of guaranty, against Kathy Grant and Charles N. Grant for breach of guaranty, and against William V. Merrill, Kathy Lynn Merrill, and the Bill and Kathy Merrill Family Trust for breach of guaranty. (*See* Answer, Aug. 2, 2013, ECF No. 35).

Jacobs' Co-Defendants conditionally settled for a total of $37,500: Glenn ($12,500); Dykes ($10,000); Waite ($7500); and McCole ($7500). (*See* Settlement Agreement 3 ¶ 2, June 13, 2013, ECF No. 40-1).  The FDIC asked the Court to rule under state law that the settlement was made in good faith.  The Court denied that motion.  The FDIC also moved to strike certain affirmative defenses, to dismiss the counterclaim, and to strike two unauthorized surreplies.  The Court granted those motions.  Jacobs moved for leave to amend the Answer.  The Court denied that motion and later reconsidered in part, permitting Jacobs to amend his Answer to more particularly identify the legal bases of his defenses, although the Court noted such amendment would not be necessary to preserve those defenses.  The Court later granted motions to voluntarily dismiss Defendants Dykes, Waite, and McCole and Third-Party Defendants Huber and Dangott, as well as Plaintiff's motion to file a second amended complaint omitting the dismissed Defendants.  Plaintiff filed the Second Amended Complaint ("SAC").

The SAC accuses Defendants Jacobs and Glenn of approving, as two of the five members of the Bank's Senior Loan Committee (the "Committee"), a $4 million loan (the "Loan") to Merrill Construction, Inc. ("Merrill"), in order to permit Merrill to refinance its loan with a non-party bank, knowing that the proceeds would be used to continue the development of twenty-five residential lots in Minden, Nevada (the "Property") at a time when it was known that real estate developments were no longer profitable in the area. (*See* Second Am. Compl. ¶¶ 14–18, 29, June 5, 2014, ECF No. 140). The SAC alleges that Defendants knew of the insolvency of the borrower and the inability of the guarantors to guaranty the Loan and that they used improper methods of appraisal and assessment.

(*See id.* ¶¶ 20–28).  Nevertheless, Jacobs, Glenn, and the rest of the Committee approved the Loan on August 23, 2007). (*Id.* ¶ 46).

Because the Loan amount exceeded the Bank's single-borrower limit, it was necessary for the bank to sell "loan participations" to other borrowers. (*Id.* ¶ 30).  After four independent banks rejected Glenn's offers to participate, Glenn and Jacobs offered loan participations to three Oklahoma banks the boards of directors on which Jacobs sat and in which Jacobs and his family held majority interests. (*Id.* ¶¶ 30–31).  Two of the Oklahoma banks, Lakeside Bank of Salina ("Lakeside") and Bank of Locust Grove ("Locust") recognized the risk of the Loan and demanded "last in, first out" clauses in their $250,000 loan participations, i.e., although they were the last to contribute money to the loan, they would be the first repaid. (*Id.* ¶ 33).  Jacobs and Glenn facilitated and approved these loan participations, although the other members of the Committee did not realize that the loan participations granted Lakeside and Locust the right to be paid first on the Loan in the event of default. (*Id.* ¶¶ 33–34).  City National Bank ("City"), the prior lender, also agreed to participate in the Loan in the amount of $500,000 conditioned on a "last in, first out" clause. (*Id.* ¶ 40).  Although City knew the loan was troubled, this arraignment still reduced City's maximum exposure from $3.5 million to $500,000. (*Id.*).  Even still, City demanded a bulk value appraisal before it would agree to participate, and the November 5, 2007 bulk value appraisal (the "Appraisal") received by Glenn was $3,050,000, almost $1 million less than the $4 million Loan. (*Id.* ¶ 41).  Glenn did not share the Appraisal, which indicated a loan-to-value ratio of 131%, with the other members of the Committee or the Board. (*Id.* ¶¶ 42–43).  Even the retail appraisal of $5 million Glenn had previously obtained resulted in a loan-to-value ratio of 80%, which was inadequate under both the Bank's policy and federal regulations. (*Id.* ¶ 21).

In January 2009, Merrill's impending default was clear, and the Committee (from which Glenn and Jacobs had since resigned) realized upon reviewing the Loan documents that Lakeside, Locust, and the previous lender, City National Bank ("City") were entitled to a collective $1 million before the Bank was entitled to anything. (*Id.* ¶ 35).[1]  Upon being informed of this in May 2009, the

---

[1] City apparently had a $500,000 last in, first out agreement with the Bank. (*See id.*).  The priority of repayment as between Lakeside, Locust, and City is not alleged.

Bank's Board of Directors (the "Board") wrote Jacobs explaining that neither the Board nor the rest of the Committee had been informed of the "last in, first out" clauses written into the loan participations by Jacobs and Glenn and implying his malfeasance. (*Id.* ¶ 36). Jacobs responded by email denying knowledge of the "last in, first out" clauses. (*Id.* ¶ 37). Although Plaintiff has evidence that this denial was false, the Board believed Jacobs' denials at the time and did not take any further action. (*Id.* ¶¶ 38–39).

The Bank was the only bidder at the foreclosure sale, and it bought the Property for a credit bid of $1.8 million. (*Id.* ¶ 45). The Bank declined to seek a deficiency judgment because it knew neither the borrower nor the guarantors could satisfy such a judgment. (*Id.*). The total losses to the Bank are approximately $2 million. (*Id.* ¶ 47). The FDIC has taken receivership of the Bank and has sued Jacobs and Glenn for gross negligence under 12 U.S.C. § 1821(k). The FDIC has listed two counts in the SAC, alleging gross negligence against both Jacobs and Glenn in count one based on a breach of their duty of care, and alleging gross negligence against Jacobs in count two based on a breach of his duty of loyalty.

Jacobs asked the Court to stay the case based on an Oklahoma state court's impending imposition of a receivership upon non-party Red Rock Insurance Co. ("Red Rock"). The Court denied the motion because the issue was irrelevant in the present case.[2] Jacobs, but not Glenn, moved for defensive summary judgment. The Court denied the motion. Jacobs has asked the Court to reconsider.

**II.   DISCUSSION**

The Court previously found that Plaintiff had presented enough evidence that Jacobs had violated his duties of care and loyalty to put the issue to a jury. Jacobs asks the Court to reconsider, arguing that because Plaintiff failed to exercise its power under § 1000 of the Federal Deposit

---

[2] On the day the Court denied the motion to stay in the present case, Jacobs again asked the Court to stay the present case because the Court had stayed another case pending in this Court where Red Rock had sued certain parties in this Court for a declaratory judgment of non-liability under an insurance policy. The Court stayed that case until December 19, 2014 because Red Rock had been placed into receivership until that date under Oklahoma law. The Court denies Jacobs' motion to stay. This Court's stay of the case where Red Rock is the plaintiff does not change the fact that the present case does not turn upon anything that may happen in that case.

4

Insurance Act to repudiate the last-in-first-out provisions of the participations in the Loan, waiver or estoppel applies as to its claims against Jacobs. The Court agrees with Plaintiff that the argument fails. The statute simply permits the FDIC to repudiate contracts or leases by an institution in its receivership if it determines them to be burdensome and if it determines the repudiation will promote orderly administration of the failed bank. *See* 12 U.S.C. § 1821(e)(1). The FDIC's discretion in determining whether to invoke this power is extensive and broad. *See GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, N.A.*, 671 F.3d 1027, 1030 (9th Cir. 2012); *McCarron v. FDIC*, 111 F.3d 1089, 1093–94 (3rd Cir. 1997) (citing *1185 Ave. of Americas Associates v. RTC*, 22 F.3d 494, 498 (2d Cir. 1994); *Howell v. FDIC*, 986 F.2d 569, 572 (1st Cir. 1993)) ("The receiver has broad discretion to determine what is burdensome, and a court's review of a decision by the FDIC to repudiate is narrowly circumscribed."). If the receiver need not give reasons for its decision to repudiate an otherwise enforceable contract under this provision, *see id.* at 1094, it certainly need not defend a decision to leave an enforceable contract intact. The Court has been unable to locate any case employing the doctrines of waiver or estoppel against the FDIC's decision whether to invoke the statute.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Reconsider (ECF No. 184) is DENIED.

IT IS SO ORDERED.

Dated this 16th day of December, 2014.

_____
ROBERT C. JONES
United States District Judge